## J. F. CLIFFORD v. S. STEWART.[1]

November 17, 1922.

No. 23,012.

**When sale of goods to be resold may be rescinded by return of unsold remainder and demand for proportionate refund.**

1. If the seller of goods knows that they are to be resold by the buyer, or are intended for consumption as food, and that the buyer will not discover that he has not received the goods purchased, or that they are not as warranted, before they are resold or partially consumed, and the value of the goods resold or consumed is readily ascertainable, the buyer may rescind the contract, return the remainder of the goods and require the seller to refund a corresponding portion of the purchase price paid.

**Questions of reasonable time and of condition of goods for the jury.**

2. Whether such goods were returned within a reasonable time or in substantially as good condition as when received was a jury question, was submitted under proper instructions and the verdict in plaintiff's favor was supported by the evidence.

**Evidence of decline in market price stricken out.**

3. Proof that there was a decline in the market price of the goods between the date of the sale and the date of the rescission of the sale

[1]Reported in 190 N. W. 613.

contract, introduced a collateral issue in the case and it was proper to strike it out.

Action in the district court for Stevens county to recover $2,447.80. The case was tried before Flaherty, J., who at the close of the testimony denied defendant's motion for a directed verdict and a jury which returned a verdict for $1,206.94. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Spooner & Phinney* and *Moore, Oppenheimer, Peterson & Dickson* and *Frank C. Hodgson*, for appellant.

*J. F. Fahey* and *James B. Ormond*, for respondent.

LEES, C.

On September 24, 1920, plaintiff, a merchant at Barry, Minnesota, purchased a carload of flour from the defendant, a miller at Morris, Minnesota. Defendant operated two mills, one at Morris and the other at Mott, North Dakota. To fill the order, he shipped 400 98-pound sacks of flour, which plaintiff accepted and for which he paid $2,490. The sacks were labeled as follows: "Mott City Mills, Family Patent Flour, Mott, North Dakota." The flour they contained was manufactured at the mill at Morris from wheat grown in that vicinity. After receiving the flour, plaintiff proceeded to sell it from the car to his customers, who were farmers living near Barry. All but about 40 sacks were sold early in October. Shortly thereafter plaintiff's customers began to complain of the quality of the flour and in many instances returned it to him. Plaintiff replaced part of it with flour manufactured at Minneapolis, and refunded the money he had received for the remainder. On December 17, 1920, he had 217 sacks on hand, made up of the unsold flour and the flour which had been returned, and shipped it to defendant, notifying him that he was returning it because it was not good flour. Defendant unloaded and stored the flour in his warehouse, paid the freight charges and notified plaintiff that the flour was in storage for and on his account. Thereafter this action was brought to recover back so much of the purchase price as was represented by the 217 sacks returned.

The complaint alleged that defendant had represented that the flour was a good merchantable article; that there was no better flour and that it was manufactured from North Dakota wheat in defendant's mill at Mott, and it further alleged that none of the representations were true. At the close of the evidence defendant moved for a directed verdict. The motion was denied, and the case submitted to the jury under instructions permitting them to return a verdict for plaintiff for the amount he had paid for the flour returned. The verdict was in plaintiff's favor and defendant has appealed from an order denying his motion for judgment notwithstanding or for a new trial.

1. Defendant's principal contention is that the contract of sale was entire, and that, if plaintiff had a right to rescind, he could exercise it only by returning all the flour he received. Plaintiff replies that defendant knew that the flour was purchased for resale and that the fact that it was not as represented could not be ascertained until a portion of it had been consumed, and hence there might be a rescission, although all the flour could not be returned.

Section 12 of the Uniform Sales Act[1] provides that any affirmation of fact or promise by the seller relating to the goods is an express warranty, if the natural tendency thereof is to induce the buyer to purchase the goods and he purchases them relying thereon. Where there is a breach of warranty, section 69 of the act gives the buyer the right, at his election, to rescind the sale and return the goods and recover the price paid. Except in the case of fraudulent warranty, this was a right he did not enjoy under the law of this state prior to the adoption of the sales act. Wirth v. Fawkes, 109 Minn. 254, 123 N. W. 661, 134 Am. St. 178. In other jurisdictions judicial opinion was divided. See Williston, Sales, § 608; Black, Rescission & Cancel. § 185; 24 R. C. L. 287. But all the courts agreed that a buyer's right to rescind was conditioned upon the return of all the goods he had received. He could not retain a portion and return the remainder, but must rescind in toto. The rule was subject to certain well established exceptions.

[1][Laws 1917, p. 770, § 12.]

If the contract was severable, there might be partial rescission. Nichols & Shepard Co. v. Wiedemann, 72 Minn. 344, 75 N. W. 208, 76 N. W. 41; Mulcahy v. Dieudonne, 103 Minn. 352, 115 N. W. 636. Defendant insists that here the contract was not severable and cites cases which, in our opinion, sustain his position. McGrath v. Cannon, 55 Minn. 457, 57 N. W. 150; Johnson v. Fehsefeldt, 106 Minn. 202, 118 N. W. 797, 20 L. R. A. (N. S.) 1069; Bentley v. Edwards, 125 Minn. 179, 146 N. W. 347, 51 L. R. A. 254, Ann. Cas. 1915C, 882.

Another exception to the rule was that the buyer was excused from returning the identical goods he received in the same condition as when received if his inability so to return them was not attributable to his own act but to the fault of the seller. In such a case, if part of the goods had been consumed, he might rescind by returning the remainder and tendering the value of those consumed. Fairbanks, Morse & Co. v. Walker, 76 Kan. 903, 92 Pac. 1129, 17 L. R. A. (N. S.) 558; Basye v. Paola Refining Co. 79 Kan. 755, 101 Pac. 658, 25 L. R. A. (N. S.) 1302, 131 Am. St. 346; Bunch v. Weil, 72 Ark. 343, 80 S. W. 582, 65 L. R. A. 80; Henninger v. Heald, 52 N. J. Eq. 431, 29 Atl. 190; Moore v. Mut. Res. Assn. 121 App. Div. 335-340, 106 N. Y. Supp. 255. In Wright v. Dickinson, 67 Mich. 580, 35 N. W. 164, 11 Am. St. 602, Champlin, J., speaking for the court, said [at page 589]:

"Where, acting in good faith, property has been so changed or lost that it cannot be restored in specie, and where its value is capable of being ascertained, a party entitled to may rescind a contract, although he cannot place the other party in statu quo. That is the law of reason, and it is the law of justice. If the current of authority is the other way, based upon technicalities, I cannot yield my assent to the doctrine."

Speaking of rescission for fraud, this court said, in I. L. Corse & Co. v. Minn. Grain Co. 94 Minn. 331, 102 N. W. 728, that a defrauded party is not bound under all circumstances to make a strict tender of the things he received, because the other party is not entitled to anything more than substantial justice and a fair oppor-

tunity to receive what he parted with. This was repeated in Clark v. Wells, 127 Minn. 353, 149 N. W. 547, L. R. A. 1916F, 476, where it was said that although the defrauded party might be unable to return all the property he received in the condition in which he received it, yet, if such inability resulted from the fault of the wrongdoer, the defrauded party might still rescind the contract and recover back what he parted with on condition that he return what he received so far as he was able to do so and secured to the wrongdoer the equivalent of what could not be returned.

It is unfortunate that the sales act has not definitely provided for such a contingency as we have here, for it is likely to arise frequently. Under the provisions of the act, if plaintiff knew when he accepted the flour that there had been a breach of warranty, he could not rescind. Subsection 3, p. 789, § 69. But he neither knew nor was able to ascertain that the quality of the flour was not as warranted until he had sold it and his customers had used a portion of it. If a seller knows that the goods are purchased for resale and that his breach of warranty will not be discovered until after they have been resold or partially consumed, and it is held that a buyer may never rescind without returning the identical goods he received, the seller, in a case such as is here presented, may rest assured that a rescission will be impossible and that the buyer's only remedy is an action for damages for breach of warranty.

In the instant case it is to be noted that defendant never delivered the kind of flour which was the subject matter of the contract of sale. The record does not show how or when plaintiff learned that the sacks did not contain flour of the description he had purchased. Apparently it was not until after the flour was returned. At all events he did not discover that a different flour had been substituted for the flour he bought until it was too late to return all he received. The rule is that the tender of goods answering the description by which they were sold is a condition precedent to the purchaser's liability and if it be not performed he may reject the goods and recover the price paid as money had and received for his use. Waeber v. Talbot, 167 N. Y. 48, 60 N. E. 288,

82 Am. St. 712; Benjamin, Sales, § 600. But this right would be of no value if, through no fault of the buyer, the deception is not discovered before part of the goods have been sold or consumed and he cannot maintain his action without rejecting and returning all of the goods.

For the reasons indicated, we conclude that if the seller knows that the goods are to be resold or are intended for consumption as food and that the buyer will not discover that he had not received the goods he purchased, or that they are not as warranted, before they are resold or partially consumed, and the value of the goods resold or consumed is readily ascertainable, the buyer may rescind the contract, return the remainder of the goods and require the seller to refund a corresponding portion of the purchase price paid.

2. Subdivision 3 of section 69 of the Uniform Sales Act conditions the buyer's right to rescind upon the giving, within a reasonable time, of notice to the seller of the election to rescind and the return of the goods in substantially as good condition as they were when transferred to the buyer. Defendant contends that the flour was not returned within a reasonable time or in substantially as good condition as it was when plaintiff received it. These were matters for the consideration of the jury and were submitted under proper instructions. Upon sufficient evidence, they have found against defendant on both issues and their verdict has received the approval of the trial judge, hence the contention cannot be sustained.

3. A witness for defendant was permitted, over plaintiff's objection, to testify that there was a decline in the market price of flour between the first of October and the fifteenth of December, 1920. Later in the trial, the court, of its own motion, struck out the testimony and refused to permit defendant to make proof by other witnesses of such decline in price. Defendant asserts that this was error because such evidence, though it related to a collateral matter, tended to show that plaintiff did not seek to rescind because the flour was not as represented, but because he had paid too much for it. In view of the fact that plaintiff would have to get the flour back from his customers in order to return it and

could not get it without supplying them with other flour or refunding the money they had paid, and then in all probability would have to bring suit against defendant, it would seem that the proffered evidence bore very remotely, if at all, upon the probability or improbability of plaintiff's claim upon the main issue in the case, and hence the court, in the exercise of judicial discretion, was justified in its action.

Order affirmed.